IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JIMMY LEE BROWN                                                   PLAINTIFF

         v.             Civil No. 07-4111

WILLIAM SMITH                                                     DEFENDANT

**O R D E R**

    Now on this 5th day of January, 2009, comes on for consideration **Defendant's Motion For Summary Judgment** (document #17), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

    1.  Plaintiff Jimmy Lee Brown ("Brown") alleges various causes of action arising out of an encounter between himself and defendant William Smith ("Smith"), a Texarkana police officer, all said to arise under **42 U.S.C. §1983**.

    Count 1 alleges that Smith discriminated against Brown by racially profiling him; Count 2 alleges Smith violated Brown's right to due process by asking to see his identification without reasonable suspicion; Count 3 alleges Smith violated Brown's right to due process by running a warrants check without reasonable suspicion; Count 4 alleges Smith deprived Brown of liberty without due process of law by telling him to stop videotaping an accident scene; Count 5 alleges Smith damaged Brown's character; and Count 6 alleges Smith was grossly negligent.

    Smith now moves for summary judgment.  The motion is fully briefed and ripe for decision.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

3. **Local Rule 56.1** requires a party moving for summary judgment to file a statement of facts which he contends are not in dispute. The facts so stated are admitted unless controverted by the non-moving party.

Smith filed a Statement of Undisputed Material Facts, none of which was controverted by Brown. In consideration of Brown's *pro se* status, the Court has recited as undisputed only those facts which are consistent with Brown's pleadings. Those facts are as follows:

* On the night of December 3, 2004, Brown, a black man, was involved in a traffic accident at the corner of County Avenue and Arkansas Boulevard in Texarkana, Arkansas.

* At about 10:30 p.m. on December 11, 2004, Brown was in a church parking lot a few blocks from the intersection where his accident occurred, filming the traffic light.[1]

* Smith, while on patrol, noticed Brown filming from the church parking lot, thought that he was filming private residences, and stopped to talk to him.

* Brown told Smith that he was videotaping the traffic signal, and the two men discussed the operation of the traffic signal.

* Smith asked Brown for identification, and Brown showed Smith his driver's license.

* Smith then returned to his patrol car, confirmed Brown's identification, and checked to see if Brown had any outstanding warrants.

* Smith then returned Brown's driver's license, and there was more discussion about the traffic signal.

* Smith did not tell Brown he was prohibited from videotaping the traffic signal, but did tell him that it might be best for him to leave so as not to cause any alarm in the

---

[1]Although neither party claims the fact is undisputed, it appears that Brown attributes the cause of his automobile accident to faulty operation of the light at County Avenue and Arkansas Boulevard, and wanted to file another light for comparison.

neighborhood.

4.   The Court finds that summary judgment is appropriate as to Count 1, which alleges that Smith discriminated against Brown by racially profiling him, because there is no evidence that such occurred.  While Brown is a black man, he offers no evidence that his race was the reason that Smith stopped his patrol car.  He claims that he was in a predominantly white neighborhood, but offers no evidence to that effect.  Nor would that fact alone make out a case of racial profiling.  Smith offers an Affidavit in which he avers that his initial contact with Brown "had nothing to do with race."  Under the evidentiary picture presented, there is simply nothing that would sustain a case of racial profiling.

5.   Count 2 alleges Smith violated Brown's right to due process by asking to see his identification without reasonable suspicion.  The Supreme Court has held that "[e]ven when law enforcement officials have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage -- provided they do not induce cooperation by coercive means."  **United States v. Drayton**, **536 U.S. 194, 201 (2002).**

In **Drayton**, the Court noted that

> [t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice.  It is beyond question that had this encounter occurred on the street, it would be constitutional.

In the case at bar, there is not even an allegation of any of these indicia of coercion, let alone proof thereof, and the Court finds that summary judgment is appropriate as to Count 2.

6.   Count 3 alleges Smith violated Brown's right to due process by running a warrants check without reasonable suspicion.

Even the briefest and least intrusive form of police seizure, the investigative stop, must be justified by reasonable suspicion to satisfy the Fourth Amendment.  **Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County**, **542 U.S. 177, 186 (2004).**  The classic legal test of whether a seizure has taken place is whether, in view of all the circumstances, a reasonable person would believe he was not free to leave.  **Brendlin v. California**, **127 S.Ct. 2400, 2405 (2007).**  It is clear from the Affidavit of William Smith, submitted in support of the pending motion, that while running the warrants check Smith had possession of Brown's identification.  A reasonable jury might find that at the point where the warrants check was run, Brown did not feel that he was free to leave the scene because his identification card was in the possession of Smith.  See **U.S. v. Black**, **240 Fed.Appx. 95, 100 (6th Cir. 2007)**(when police officer takes driver's license and walks away with it, no reasonable motorist would feel free to leave, as he would have to either drive without

a license or abandon his car).

The Court, therefore, turns to the question of whether Smith had a reasonable suspicion that Brown had committed, or was about to commit, a crime.  In his Affidavit, Smith avers that he approached Brown "[b]ecause of the time of day, which was around 10:30 p.m., and a suspicious behavior of the individual."  It is not clear what "suspicious behavior" Smith has reference to, but the Affidavit also avers that Brown was "filming what I believed to be private residences."[2]

The Court does not find anything in Smith's Affidavit that would justify a reasonable suspicion that Brown had committed or was about to commit any crime.  There is no suggestion that the locale was a high-crime neighborhood;  that there had been any recent reports of crime in the area; that Smith was searching for a particular person thought to have committed a crime; or that the

---

[2] The Court notes that Smith attempts to justify his conduct with regard to Count 3 by reference to **A.R.Cr.P. 2.2** and **3.1**.

**Rule 2.2(a)** allows a law enforcement officer to "request any person to furnish information or otherwise cooperate in the investigation or prevention of crime." **Rule 3.1** allows a law enforcement officer to "stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit" a felony or certain described misdemeanors.

The Arkansas Supreme Court has considered similar situations -- where an individual was stopped with no basis for reasonable suspicion -- and rejected the position here taken by Smith. As explained by Justice George Rose Smith in **Meadows v. State**, **269 Ark. 380, 383-84, 602 S.W.2d 636, 638 (1980),** a case where a similar request for identification and warrants check uncovered an outstanding warrant,

> if the officers' conduct in this case is proper, then any law enforcement officer may stop a citizen at any time, without reasonable grounds for suspicion, request identification, and arrest and search the citizen if his identity uncovers an outstanding felony warrant. We need not sift through the Supreme Court's decisions to find that tribunal's probably answer to the question presented by this case.  Our own Rules of Criminal Procedure unmistakably require that the evidence seized in this case be suppressed.

The case cited by Smith, **Scott v. State**, **347 Ark. 767, 67 S.W.3d 567 (2002)**, is readily distinguishable.  The police there were conducting a criminal investigation, which brought their "knock and talk" inquiry of the plaintiff within the parameters of **Rule 2.2.**  Such is not the case here.

lateness of the hour was such as to generate suspicion. Brown was simply standing in a parking lot operating a video camera after dark. While this behavior might be odd, it was not criminal and not particularly suspicious.

In the absence of anything upon which to base reasonable suspicion, reasonable jurors could find that Brown was unconstitutionally detained during the warrants check. For this reason, summary judgment on Count 3 is not appropriate.

7.   Count 4 alleges Smith deprived Brown of liberty without due process of law by telling him to stop his videotaping. In his Affidavit, Smith avers that he did not tell Brown to stop videotaping, but "did suggest to him that it might be best for him to leave so it did not cause any alarm in the neighborhood."

Brown offers no evidence to refute Smith's Affidavit on this point, and even his pleading does not tend to refute it. The Court finds that summary judgment is appropriate on Count 4.

8.   Count 5 alleges Smith damaged Brown's character; Count 6 alleges Smith was grossly negligent. There is no evidence on these Counts one way or the other, and the Court finds that summary judgment is not appropriate as to either of them.

**IT IS THEREFORE ORDERED** that **Defendant's Motion For Summary Judgment** (document #17) is **granted in part and denied in part.**

The motion is **granted** insofar as it seeks summary judgment in defendant William Smith's favor on plaintiff Jimmy Lee Brown's

claims that Smith discriminated against Brown by racially profiling him; violated Brown's right to due process by asking to see his identification without reasonable suspicion; and deprived Brown of liberty without due process of law by telling him to stop videotaping an accident scene.

The motion is **denied** as to all other Counts of the Complaint.

**IT IS SO ORDERED.**

                                                    /s/ Jimm Larry Hendren
                                                   **JIMM LARRY HENDREN**
                                                   **UNITED STATES DISTRICT JUDGE**