IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JIMMY LEE BROWN                                                    PLAINTIFF

            v.              Civil No. 07-4111

WILLIAM SMITH                                                      DEFENDANT

<u>O R D E R</u>

On the 15th day of January, 2009, the captioned matter came on for trial to the Court. Plaintiff appeared *pro se*, and defendant appeared in person and was represented by counsel Ralph Ohm. The Court heard the testimony of the witnesses, and received documentary evidence, and now makes the following findings of fact and conclusions of law:

1. Plaintiff Jimmy Lee Brown ("Brown") alleges that defendant William Smith ("Smith"), a Texarkana police officer, violated his constitutional rights by running a warrants check without reasonable suspicion; damaged his character by denoting him as a "suspicious person" in a police record; and was grossly negligent in failing to correct the alleged malfunctioning of a traffic signal.

2. The incident in suit developed in consequence of a traffic accident on December 3, 2004, which involved Brown, a black man. The accident occurred after dark at the intersection of County Avenue and Arkansas Boulevard in Texarkana, Arkansas. Brown believed that a malfunction of the traffic signal at the intersection caused or contributed to the accident.

3.    A week later, on December 11, 2004, Brown videotaped the operation of the traffic signal at County Avenue and Arkansas Boulevard, and then moved his video equipment to a church parking lot a block away, at the intersection of 36th Street and County Avenue.  His purpose there was to film a different traffic signal for purposes of comparison.  This second intersection was in a residential neighborhood.

4.    Smith was patrolling the area, noticed Brown videotaping from the church parking lot, thought that he was filming private residences, and stopped to talk to him.  Smith was concerned about the possibility that Brown might be violating an Arkansas statute which makes it a misdemeanor to "[l]inger[] or remain[] on or about the premises of another for the purpose of spying upon or invading the privacy of another." **A.C.A. §5-71-213**.  In addition, Smith had in mind the fact that there had been an unusually high rate of complaints -- some 180 calls in the last quarter of 2004 -- in the neighborhood of that intersection.

5.    Brown told Smith that he was videotaping the traffic signal, and the two men discussed the operation of the traffic signal for a few moments.  Smith then asked Brown for identification, and Brown handed Smith his driver's license.

6.    Smith ran a radio check to determine whether Brown had any outstanding warrants.  Smith and Brown differ on whether Smith ran the records check while standing near Brown, or took Brown's

-2-

license back to his patrol car to do so, but based on the proof at trial the Court finds this an issue of no moment. The circumstances under which Smith asked Brown for identification and checked to see if there were any outstanding warrants for Brown were such as to cause Smith to have reasonable suspicion that the offense of loitering was being committed, thus justifying the minimal intrusion of the records check.

"A law enforcement officer has reasonable suspicion when the officer is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed'." **U.S. v. Houston**, **548 F.3d 1151, 1153 (8th Cir. 2008)**. "Reasonable suspicion requires more than a general hunch, but only that 'police articulate some minimal, objective justification for an investigatory stop'." **U.S. v. Long**, **532 F.3d 791, 795 (8th Cir. 2008)**.

At trial, Smith articulated his concern about the lateness of the hour, the high rate of crime in the neighborhood, and the fact that Brown appeared to be lingering on the church premises for the purpose of spying -- through his camera -- on residents of the neighborhood. This satisfies the requirement of reasonable suspicion, which in turn justifies Smith in checking to see if Brown had any outstanding warrants.

An investigatory stop supported by reasonable suspicion "can

become unreasonable if it 'lasts for an unreasonably long time'," and police must use "'the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose' of the stop'." **U.S. v. Gill**, **513 F.3d 836, 846 (8th Cir. 2008).** Here, the stop lasted for only slightly over six minutes, and the investigation involved only Smith's questions of Brown and his check of Brown's identification and warrants record. Under the circumstances, this brief and minimally intrusive stop and investigation was not unreasonable, and did not violate Brown's Fourth Amendment rights.

7.   Smith determined that Brown had no outstanding warrants, and returned his driver's license, whereupon the two mean had further discussion about the traffic signal. Smith told Brown that it might be best for him to leave so as not to cause any alarm in the neighborhood, but did not tell Brown he was prohibited from videotaping the traffic signal. Brown packed his video equipment and left the area. Smith did not prepare a police report about the incident.

8.   Two documents from the Texarkana Police Department were introduced into evidence. One is entitled "POLICE - CLOSED INCIDENT DISPLAY"; the other is entitled "POLICE - INCIDENT INFO DISPLAY." The first of these indicates that Brown is a "SUSPICIOUS PERSON." The second, which contains basically the same information, does not contain the words "SUSPICIOUS PERSON."

-4-

Brown contends that he has been defamed by the document which indicates he is a "SUSPICIOUS PERSON."

The Court doubts that a constitutional violation could be made out even if the facts were as Brown sees them, but need not conduct in-depth legal analysis on the issue because it finds the facts to be different.  Smith testified that he did not prepare any report denoting Brown as a "SUSPICIOUS PERSON."  Lt. Doug Avery of the Texarkana Police Department testified that the documents in question were "dispatcher screens," and that Smith did not file an incident report.  There is, therefore, no merit to Brown's contention that Smith damaged his reputation by tagging him as a "SUSPICIOUS PERSON."

9.  Brown's final claim, that Smith was negligent with regard to the operation of the traffic signal at the intersection of County Avenue and Arkansas Boulevard in Texarkana, Arkansas, is also without merit.  As with Brown's defamation claim, the Court doubts that §1983 is a proper vehicle for such a claim, but the evidence would not support it in any event.  Smith testified that he has nothing to do with the operation of traffic signals, although he would have reported a malfunction if he had seen one. He testified that he did not see any malfunction, nor is there evidence of such before the Court.  Brown's claim was that the light was flashing red and yellow rather than cycling from green to yellow to red, and Brown stated that Smith explained to him

that a blinking light is "just like a stop sign."

10.   Because there is insufficient evidence to support any of Brown's contentions in this case, the Court finds that judgment should be granted in favor of Smith.

**IT IS THEREFORE ORDERED** that the claims of plaintiff Jimmy Lee Brown against defendant William Smith are hereby **dismissed with prejudice.**

**IT IS SO ORDERED** this 21st day of January, 2009.

                <u>  /s/ Jimm Larry Hendren  </u>
                **JIMM LARRY HENDREN**
                **UNITED STATES DISTRICT JUDGE**